IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| ELVIN TORRES-ESTRADA,<br><br>Plaintiff,<br><br>v.<br><br>CARLOS CASES ET AL.,<br><br>Defendants. | CIV. NO.: 19-2013 (SCC) |

**OPINION AND ORDER**

Plaintiff Elvin Torres-Estrada filed this lawsuit against the United States and several federal law enforcement officers, bringing claims under the Federal Tort Claims Act ("FTCA") and *Bivens*.[1] Mr. Torres alleges that these officers violated his First, Fourth, Fifth, Sixth, and Eighth Amendment rights and committed negligence, intentional infliction of emotional distress, assault, battery, and false imprisonment by attempting to coerce witnesses to falsely testify against him, trying to get him to falsely implicate himself, using jailhouse informants to get incriminating statements from him, placing him in solitary confinement, and subjecting him to a body search.

This lawsuit was initially filed in the U.S. District Court for the Southern District of California. There, the United

---

1. The U.S. Supreme Court held in *Bivens v. Six Unknown Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), that there is an implied private right of action against federal officials to recover damages for the deprivation of constitutional rights. *See id.* at 389.

States moved to dismiss Mr. Torres's complaint for lack of subject-matter jurisdiction and improper venue or, alternatively, to transfer the case to the U.S. District Court for the District of Puerto Rico. Docket No. 4-1, pg. 1. The court granted the United States its alternative relief, transferring the case here. Docket No. 10-1, pg. 1. The United States now moves the Court to dismiss Mr. Torres's complaint for lack of subject-matter jurisdiction and failure to state a claim upon which relief can be granted. Docket No. 24.

For the reasons that follow, we **DISMISS** Mr. Torres's FTCA claims that are based on conduct that occurred before December 2015 for failure to exhaust administrative remedies within two years of their accrual. We, moreover, **DISMISS** Mr. Torres's remaining FTCA claims because the conduct that forms the basis of them falls within the discretionary function exception. And, finally, we **DISMISS** Mr. Torres's *Bivens* claims as time barred. Because we have dismissed Mr. Torres's claims against the named defendants, we **ORDER** him to **SHOW CAUSE** why his claims against the unnamed defendants should not be dismissed as well.

Before turning to the merits of the United States' motion to dismiss Mr. Torres's complaint, we address first Mr. Torres's contention that we are required to deny the United States' motion insofar as it is based on his failure to state a claim, Docket No. 25, pg. 2, because the U.S. District Court for the Southern District of California determined that his complaint "contains colorable FTCA and *Bivens* claims."

Docket No. 10-1, pg. 8. That court, however, did not determine that his complaint states a claim. Instead, the court determined that his complaint was nonfrivolous when it was considering whether the interests of justice weighed in favor of transferring the case rather than dismissing it. *See* Docket No. 10-1, pg. 8 (explaining that "transfer will be in the interest of justice if there is no evidence the case was filed in bad faith and the plaintiff makes a colorable claim"). So there has not yet been a determination as to whether the complaint states a claim.

But even if the U.S District Court for the Southern District of California had determined that Mr. Torres's complaint states a claim upon which relief can be granted, we would not be bound by that decision. For we are free to reconsider earlier interlocutory orders, including denials of motions to dismiss. *Harlow v. Children's Hosp.*, 432 F.3d 50, 55 (1st Cir. 2005); *see also Latin Am. Music Co. v. Media Power Grp., Inc.*, 705 F.3d 34, 40 (1st Cir. 2013) ("[I]nterlocutory orders . . . remain open to trial court reconsideration, and do not constitute the law of the case." (quoting *Harlow*, 432 F.3d at 55)).

I. FTCA Claims

The United States has moved the Court to dismiss Mr. Torres's FTCA claims under Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction, arguing that the officers' prisoner placement and investigation decisions fall within the discretionary function exception. Docket No. 25, pgs. 6–7. The United States also argues that Mr. Torres has

Case 3:19-cv-02013-SCC   Document 33   Filed 03/30/21   Page 4 of 15

Torres-Estrada v. Cases et al.                                              Page 4

failed to exhaust administrative remedies for his claims based on the officers' search of his body. Docket No. 24, pg. 2.

### A. Failure to Exhaust Administrative Remedies

We begin with the United States' argument that Mr. Torres has failed to exhaust administrative remedies for his claims based on officers' search of his body. Under the FTCA, a plaintiff may not bring a lawsuit against the United States unless he has exhausted his administrative remedies with the appropriate federal agency within two years of his claims' accrual. 28 U.S.C. § 2401(b). This requirement is "non-waivable [and] jurisdictional." *Acosta v. U.S. Marshals Serv.*, 445 F.3d 509, 513 (1st Cir. 2006) (quoting *Santiago-Ramirez v. Sec'y of Dep't of Def.*, 984 F.2d 16, 18, 19–20 (1st Cir. 1993)). Tort claims generally accrue "at the time of the plaintiff's injury." *Gonzalez v. United States*, 284 F.3d 281, 288 (1st Cir. 2002).

Mr. Torres's complaint provides the date that officers allegedly searched his body for a cell phone: "on or about June 18, 2014." Docket No. 1, pg. 13. His complaint also provides the dates that he filed his administrative claims: "December 28, 2017," and "December 29, 2017." Docket No. 1, pg. 6. By our count, then, three and half years passed between the officers' search and Mr. Torres's administrative claims. We, therefore, lack jurisdiction to consider Mr. Torres's claims based on this search because they were not administratively exhausted within two years of their accrual.

Although Mr. Torres has told us that he can amend his complaint to cure his failure to exhaust administrative remedies, Docket 25, pg. 18, we disagree. He tells us that if we give him leave to amend, he will establish that he waited six months for a resolution after filing his administrative complaint before filing this lawsuit and that the government acknowledged his administrative claim had been denied and that he had six months from the date of denial to file a lawsuit. Docket No. 25, pgs. 17–18. But the issue is not when Mr. Torres brought this lawsuit. Rather, it is when he filed his administrative complaints. And in Mr. Torres's sur-reply, he does not argue that he filed one in time to save his June 2014 body search claims. He argues instead that his December 2017 administrative filings save claims based on conduct that "happened between 2015 and 2017." Docket No. 31, pg. 3. We, therefore, decline to allow Mr. Torres to amend his complaint to cure his failure to administratively exhaust his claims.

We observe that many allegations in Mr. Torres's complaint are based on conduct that occurred before December 2015, which means that we also lack jurisdiction to consider those claims. Moving forward, our analysis focuses on claims that accrued in or after December 2015. Because we ultimately find that we lack subject-matter jurisdiction over these claims based on the discretionary function exception, we do not delve into whether he properly exhausted his administrative remedies for them.

B. DISCRETIONARY FUNCTION EXCEPTION

We begin our discretionary function exception analysis by specifying which of Mr. Torres's claims may be brought under the FTCA. The United States, as a sovereign, "is immune from suit without its consent." *Evans v. United States*, 876 F.3d 375, 380 (1st Cir. 2017). The FTCA waives the United States' sovereign immunity for certain torts, *Holloway v. United States*, 845 F.3d 487, 489 (1st Cir. 2017), including negligence and "assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution" by a "investigative or law enforcement officer," *see* 28 U.S.C. § 2680(h). Constitutional tort claims, however, may not be brought under the FTCA. *Villanueva v. United States*, 662 F.3d 124, 127 (1st Cir. 2011) ("[C]onstitutional tort claims are not cognizable under the FTCA." (citing *Fed. Deposit Ins. Corp. v. Meyer*, 510 U.S. 471, 478 (1994))). Mr. Torres, then, may bring only his negligence, assault, battery, and false imprisonment claims under the FTCA.

The United States' waiver of immunity under the FTCA is subject to certain exceptions. One of these is the discretionary function exception. This exception bars liability for claims "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the government, whether or not the discretion involved be abused." *Evans*, 876 F.3d at 380 (quoting 28 U.S.C. § 2680(a)). If the discretionary function exception applies, we lack subject-matter jurisdiction

over those claims. *Reyes-Colón v. United States*, 974 F.3d 56, 58 (1st Cir. 2020).

We note that there is a circuit split as to whether the United States may be immune from intentional torts through the discretionary function exception. Section 2680(h) of the FTCA provides that the United States may be liable only for certain intentional torts. *See* 28 U.S.C. 2680(h). The Eleventh Circuit has determined that the discretionary function exception does not apply to these intentional torts because section 2680(h) allows liability for *any* claim arising from them. *See Nguyen v. United States*, 556 F.3d 1244, 1256–57 (11th Cir. 2009) (emphasis added). That is, the intentional torts in section 2680(h) are not limited to only non-discretionary conduct. But every other circuit to consider this issue has come out the other way. Because section 2680(h) states that "the provisions of this chapter . . . shall apply to any claim" based on these intentional torts and the discretionary function exception in section 2680(a) is, indeed, a provision of this chapter, these circuits have held that the discretionary function exception applies. *See Linder v. United States*, 937 F.3d 1087, 1089 (7th Cir. 2019) (collecting cases from the Fourth Circuit, Fifth Circuit, Ninth Circuit, and D.C. Circuit). We agree with this reading of section 2680(h) and hold that all of Mr. Torres's FTCA claims are subject to the discretionary function exception.

Having concluded that this exception applies to all of Mr. Torres's FTCA claims, we turn now to our discretionary function exception scrutiny. We must first "identify the conduct that is alleged to have caused the harm," then "determine whether that conduct can fairly be described as discretionary." *Fothergill v. United States*, 566 F.3d 248, 252 (1st Cir. 2009). And, if so, we decide "whether the exercise or non-exercise of the granted discretion is actually or potentially influenced by policy considerations." *Id.* Because our analysis is based on the pleadings, we take as true Mr. Torres's well-pleaded facts and draw all reasonable inferences in his favor. *Id.* at 251. For analytical ease, we have divided Mr. Torres's allegations into two categories: (1) placement decisions and SHU segregation, and (2) jailhouse informants.

1. PLACEMENT DECISIONS & SHU SEGREGATION

Mr. Torres alleges that officers committed negligence and/or false imprisonment by housing him in a maximum-security institution when he warranted a minimum-security institution, placing him in Special Housing Unit ("SHU") segregation, placing him in a "Two Hour Watch" program where he is required to check in with prison staff every two hours, and housing him with inmates who are cooperating with the United States. Docket No. 1, pgs. 12, 14–17.

We evaluate first whether these decisions are discretionary. If there is a federal statute or regulation prescribing a course of action that an officer must follow such that the officer's decision was not the "product of judgment

Case 3:19-cv-02013-SCC   Document 33   Filed 03/30/21   Page 9 of 15

TORRES-ESTRADA V. CASES ET AL. Page 9

or choice," then the conduct is not discretionary. *Berkovitz v. United States*, 486 U.S. 531, 536 (1988). But where the "[officers] in question have latitude to make decisions and choose among alternative courses of action," the conduct is discretionary. *Carroll v. United States*, 661 F.3d 87, 101 (1st Cir. 2011) (quoting *Bolduc v. United States*, 402 F.3d 50, 61 (1st Cir. 2005)). Officers are given broad latitude to classify prisoners and place them in institutions, limited only by a list of considerations. *See, e.g.*, 18 U.S.C. § 3621 (providing that officers may choose the prisoner's place of imprisonment, considering factors such as "the nature and circumstances of the offense," "history and characteristics of the prisoner," and "the resources of the facility contemplated"); 18 U.S.C. § 4081 (providing that prisoners should be properly classified and segregated "according to the nature of the offense committed, the character and mental condition of the prisoners, and such other factors as should be considered in providing an individualized system of discipline, care, and treatment of the persons committed to such institutions"). Officers have similarly broad latitude to place prisoners in the SHU. *See, e.g.*, 18 U.S.C. § 4042(a)(2)–(3) (stating that officers must provide for prisoners' "protection," "discipline," "safekeeping," and "care"); 28 C.F.R. § 524.72(h) (providing that an inmate may be assigned separation based on a variety of factors). Because officers' decisions concerning how to classify, where to place, and whether to separate prisoners are subject to judgment or choice, we conclude that they are

discretionary. *See Cohen v. United States*, 151 F.3d 1338, 1343–44 (11th Cir. 1998) (concluding that "Congress intended to give the BOP discretion in making its classification decisions and determinations about placement of prisoners"); *Rich v. United States*, 811 F.3d 140, 145 (4th Cir. 2015) (concluding that the decision to place a prisoner in the SHU is discretionary).

Turning to the final step of our analysis, we have no difficulty concluding that the discretion given to officers to make prisoner classification, placement, and SHU-related decisions are grounded in public policy. We begin with a "presumption that the exercise of discretion by a government official implicates a policy judgement." *Carroll*, 661 F.3d at 104. And, here, this discretion implicates policy judgments about preserving internal order in prisons, discipline, maintaining institutional security, available resources, and appropriate security levels. *See Cohen*, 151 F.3d at 1344 ("Deciding how to classify prisoners and choosing the institution in which to place them are part and parcel of the inherently policy-laden endeavor of maintaining order and preserving security within our nation's prisons." (citing *Bell v. Wolfish*, 441 U.S. 520, 547 (1979)); *Rich*, 811 F.3d at 146 (holding that decisions concerning whether to separate prisoners are "precisely the kind of determinations that the discretionary function exception is intended to protect"); *Dykstra v. U.S. Bureau of Prisons*, 140 F.3d 791, 796 (8th Cir. 1998) (determining that classification decisions are "inherently grounded in social, political, and economic

policy"). We hold that these types of policy decisions are those that Congress, through the discretionary function exception, "wanted to prevent courts from second-guessing." *Fothergill*, 566 F.3d at 253. The United States, therefore, is not liable under the FTCA for its decisions to house Mr. Torres in a maximum-security institution, place him in the SHU, place him in the "Two Hour Watch" program, and house him with inmates who are cooperating with the United States.

We dismiss Mr. Torres's negligence and false imprisonment claims insofar as they are based on these decisions because we lack subject-matter jurisdiction over them. *See Carroll*, 661 F.3d at 93 (providing that federal courts lack subject-matter jurisdiction over FTCA claims when an exception applies).

2. JAILHOUSE INFORMANTS

Mr. Torres alleges that officers negligently tried to elicit from him incriminating statements about the murder of a corrections officer using jailhouse informants. Docket No. 1, pgs. 9–13. We evaluate first whether the decision to use jailhouse informants in a murder investigation is discretionary. We hold that it is.

The discretionary function exception "protects decisions concerning the scope and manner" of an investigation so long as a federal statute or policy does not specifically mandate a course of action. *Vickers v. United States*, 228 F.3d 944, 951 (9th Cir. 2000). Mr. Torres, who bears the burden of proving that sovereign immunity has been waived, has not pointed us to

any statute, regulation, or policy that requires officers to use jailhouse informants to investigate a murder. *See Mahon v. United States*, 742 F.3d 11, 14–15 (1st Cir. 2014) (affirming dismissal for lack of subject-matter jurisdiction at the pleadings stage because plaintiff could not point to a specific statute or policy mandating the United States' behavior and, thus, its behavior was discretionary). And, because he has not pointed us to such a statute or policy, we find that the decision to use jailhouse informants in a murder investigation is the product of choice and is, therefore, discretionary. *See id.* at 15–16; *see also Bernitsky v. United States*, 620 F.2d 948, 955 (3d Cir. 1980) (concluding that "[d]ecision making as to investigation and enforcement" are "discretionary judgments").

We, moreover, conclude that the discretion to select the manner and means of an investigation is policy driven. For investigations "clearly require investigative officers to consider relevant political and social circumstances in making decisions about the nature and scope of a criminal investigation." *Alfrey v. United States*, 276 F.3d 557, 565 (9th Cir. 2002); *see also Suter v. United States*, 441 F.3d 306, 312 (4th Cir. 2006) (concluding that the FBI's investigation decisions are those "which we would expect inherently to be grounded in considerations of policy" (quoting *Baum v. United States*, 986 F.3d 716, 721 (4th Cir. 1993))). The United States' decision to use jailhouse informants to investigate the murder of a corrections officer, therefore, falls within the discretionary function exception. Mr. Torres's negligence claim is barred for

lack of subject-matter jurisdiction insofar as it is based on this decision.

## II. BIVENS CLAIMS

Mr. Torres raises *Bivens* claims against the officers for allegedly violating his First, Fourth, Fifth, Sixth, and Eighth Amendment rights. In *Bivens*, the U.S. Supreme Court recognized a private right of action against federal officers who have allegedly violated constitutional rights. *Casey v. Dep't of Health & Hum. Servs.*, 807 F.3d 395, 400 (1st Cir. 2015); *see also Bivens v. Six Unknown Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 389 (1971) (holding that a Fourth Amendment violation by a federal agent gives rise to a cause of action for damages). But the U.S. Supreme Court has recognized *Bivens* actions only in particular situations implicating the Fourth, Fifth, or Eighth Amendment. *González v. Vélez*, 864 F.3d 45, 53 (1st Cir. 2017). The Court, moreover, has expressed great reluctance at extending the *Bivens* remedy further, calling it a "disfavored judicial activity." *See Ziglar v. Abbasi*, 137 S. Ct. 1843, 1857 (2017). We, however, need not opine on whether Mr. Torres's particular claims fit within the narrow confines of *Bivens* because we find that they fail for another reason: the statute of limitations has expired.

Although Congress has not provided a statute of limitations for *Bivens* actions, "courts generally have applied state statutes of limitations to *Bivens* actions." *Estate of Barrett v. United States*, 462 U.S. 28, 38 (1st Cir. 2006) (quoting *Rossiter v. Potter*, 357 F.3d 26, 34 n.7 (1st Cir. 2004)). Here, Puerto

Case 3:19-cv-02013-SCC  Document 33  Filed 03/30/21  Page 14 of 15

TORRES-ESTRADA V. CASES ET AL. Page 14


Rico's[2] statute of limitations for Mr. Torres's claims based on "fault or negligence" is one year. P.R. Laws Ann. tit. 31, § 5298(2) (2020). The accrual date of Mr. Torres's claims, however, is governed by federal law, which provides that the "statute of limitations on a *Bivens* claim begins to run when the plaintiff knows or has reason to know of the existence and cause of the injury which is the basis of his action." *Pagán-González v. Moreno*, 919 F.3d 582, 589 (1st Cir. 2019).

Mr. Torres filed his complaint on January 9, 2019. Docket No. 1. To have filed within the one-year statute of limitations, then, his claims must have accrued on or after January 9, 2018. But the allegations in Mr. Torres's complaint occurred before January 9, 2018. Mr. Torres alleges, for example, that the United States used audio and video recording equipment near his seat while he was being transferred to another facility—an incident that was documented in a report from March 2013. Docket No. 1, pgs. 9–10. And the allegations concerning the United States' usage of jailhouse informants are dated between 2013 and 2017. Docket No. 1, pgs. 9–12. The body search for a cellphone, moreover, took place on or about June 18, 2014. Docket No. 1, pg. 13. Finally, the "un-

---

2. Because Mr. Torres's case was transferred to Puerto Rico under 28 U.S.C. § 1406(a) due to improper venue in California, Docket No. 10-1, pg. 7, Puerto Rico's statute-of-limitations period applies, and the date that Mr. Torres filed his complaint in California counts as the date of filing in our statute-of-limitations analysis. *See Lafferty v. Gito St. Reil*, 495 F.3d 72, 81 (3d Cir. 2007) ("[T]he transferee forum's limitations statute applies and the date of the initial filing in the improper forum counts as the date of the filing in the transferee forum for limitations purposes when the case is transferred rather than dismissed under § 1406(a).").

mirandized custodial interrogation" took place in May 2017. Docket No. 1, pg. 15. Because Mr. Torres's complaint contains no allegations of conduct that occurred within one year of this lawsuit being filed, we dismiss his *Bivens* claims as time barred.

In sum, we **DISMISS** Mr. Torres's FTCA claims that are based on conduct that occurred before December 2015 for failure to exhaust administrative remedies within two years of their accrual. We **DISMISS** Mr. Torres's remaining FTCA claims because the conduct that forms the basis of them falls within the discretionary function exception. We, finally, **DISMISS** Mr. Torres's *Bivens* claims as time barred. Because we have dismissed Mr. Torres's claims against the named defendants, we **ORDER** him to **SHOW CAUSE** why his claims against the unnamed defendants should not be dismissed as well. He has **fourteen (14) days** to show cause in a filing, which must comply with Local Rule 7(d) and be no longer than ten (10) pages. Failure to comply with this order will result in the dismissal of Mr. Torres's claims against the unnamed defendants.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 30th day of March, 2021.

        S/ SILVIA CARREÑO-COLL
        UNITED STATES DISTRICT COURT JUDGE